IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACI TOTH, | ) |
| | ) |
| Plaintiff, | ) Case No. 17 C 6186 |
| | ) |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| RICH TOWNSHIP HIGH SCHOOL DISTRICT | ) |
| 227, ANTOINE BASS, in his individual capacity, | ) |
| RANDY ALEXANDER, in his individual capacity, | ) |
| SHANNON ROSS-SMITH, in his individual | ) |
| capacity, and DR. DELORES WOODS, in her | ) |
| individual capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Traci Toth brought a three count complaint against defendants Rich Township High School District 227 ("District") and Board of Education ("Board") members Antoine Bass, Randy Alexander, Shannon Ross-Smith, and Dr. Delores Woods, all in their individual capacities (collectively "defendants"), alleging violations of 42 U.S.C. § 1981 (Count I), 42 U.S.C. § 1983 (Counts II and III), and the Fourteenth Amendment (Count III). Defendants moved for summary judgment on all counts. Plaintiff cross-moved for summary judgment on her Fourteenth Amendment claim in Count III. For the reasons discussed below, both motions are denied.

## BACKGROUND

The following facts are stated as favorably to plaintiff as permitted by the record and Local Rule 56.1.[1] See Woods v. City of Berwyn, 803 F.3d at 867 (7th Cir. 2015). Plaintiff, a

---

[1] Defendant requests that the court strike several paragraphs from plaintiff's response to defendants' Local Rule 56.1 statement of facts for failure to comply with the local rule. Several of plaintiff's responses are impermissibly argumentative and verbose, spanning several paragraphs and several pages. Local Rule 56.1 requires short and concise responses. The use of headings and multiple paragraphs is inappropriate. However, in the interest of

1

Caucasian educator, has worked for the District at its Rich East campus since 1994. Plaintiff was promoted to an Associate Principal of Teaching and Learning position in 2002. In February 2016, plaintiff was informed that her employment contract for that position would not be renewed when it expired on June 30, 2016, but that she could interview for a teaching position. Later in February 2016, the Board voted not to renew the contracts of eleven administrators, including plaintiff. Plaintiff claims that eight of those affected were African American and three, including plaintiff, were Caucasian. Plaintiff claims that all of the African American administrators—except for two who opted to resign—were reassigned to similar administrative positions at other campuses. Plaintiff did not receive an administrative reassignment and was instead demoted to a teaching position.

Plaintiff claims that Bass, Alexander, Smith-Ross, and Dr. Woods, all of whom are Black, voted to demote plaintiff to a teaching position on account of her race. Affidavit testimony by co-superintendent Patricia Welch states that defendant Antoine Bass, the then-president of the Board, met with her and the other co-superintendent, Ron Patton, in the fall of 2015 to discuss his plan to "dismiss" all the administrators and force them to reapply for their jobs. The student body of the District is majority African American, and the community had demanded more African American teachers and administrators, believing that they would better serve the students. Defendants claim that they pursued this plan because they were in the process of hiring a new superintendent and they wanted to give the new superintendent the opportunity to hire administrators of his/her choosing. Plaintiff asserts that this argument is pretext as the District had not yet hired a new superintendent. Indeed, the District did not hire a new superintendent until August of 2017, almost eighteen months after plaintiff's demotion.

---

expediency, the court declines to strike the requested paragraphs, but will consider factual material only to the extent it is supported by the record.

The exception to Bass's plan to remove administrators were the administrators at Rich South—all of whom were Black. Welch's testimony states that Bass specifically mentioned removing plaintiff and Bob Abrams "due to their 'arrogance towards Black students.'" (Doc. 90, Ex. H, ¶¶ 6-7). According to Welch's affidavit, Bass "seemed fixated on the notion that white administrators were 'arrogant' in their dealings with Black students." (Id.).

The eleven non-renewed administrators were told that they would be able to interview for their former positions. To facilitate this process, the Board created a committee to interview the administrators and determine whether they should be rehired. Mark Kramer, principal of Rich East and a white man, was not permitted to make a recommendation on rehiring administrators for his school.[2] However, the principals at Rich South and Rich Central, both of whom were Black, were permitted to make such a recommendation. Kramer's affidavit testimony states that he would have rehired plaintiff and that most of the committee ranked plaintiff as the best candidate to fill her former position.

Ultimately, plaintiff was not offered her former position. Instead, she was offered a teaching position at a much reduced salary. Plaintiff claims that all of the African American administrators, except for the two who resigned, were reassigned to administrative positions at other campuses. Of the two remaining white administrators, one resigned and the other, an athletic director, retained his job. Only plaintiff was demoted to a teaching position. By the end of the process, none of the assistant principals were white.

Prior to the demotion, plaintiff had entered into the District's retirement incentive program. Under the program, eligible employees were required to notify the Board in writing if they intended to retire within the next four years. The Board would then vote to approve the

---

[2] Defendants claim that Kramer was leaving his position as principal of Rich East and therefore had no interest in making a decision.

projected retirement date. Once approved, the employee would receive a 6% salary increase each year until retirement. In addition to the increased salary, the Board would increase its contributions to the employee's individual retirement account with the Illinois Teacher's Retirement System for each year until retirement. The program also included a lump-sum reimbursement for the employee's post-retirement health insurance.

In 2015, plaintiff issued a notice of intent to retire in 2019, which was formally accepted by the Board at its June 16, 2015, meeting. Plaintiff was subsequently notified by the Board that her early retirement was accepted, and the Board provided a "Projected Retirement Salary Summary" showing her base salary and corresponding 6% increases for each year until 2019. The District paid the 6% increase for the 2015-16 school year, the last year plaintiff held an administrative role. When reassigned to a teaching position, the District decreased plaintiff's salary from approximately $131,000 to $94,000. In addition to the decrease in salary, plaintiff lost the medical insurance reimbursement, the promised 6% increase in salary each year, and the increased contributions to her individual retirement account. However, officials in the District, including co-superintendent Patricia Welch and Head of Human Resources Julie Grohn, repeatedly promised plaintiff that she would continue to receive her early retirement benefits if she were demoted to a teaching position.[3]

Plaintiff did not receive any notice that her 6% salary stipend and other retirement benefits would be terminated. She was not given a hearing to address the termination of her benefits. There is no evidence in the record that the Board informed plaintiff that she could

---

[3] The parties dispute whether the District had a policy of paying retirement track salary and benefits if an administrator was demoted to the classroom. Plaintiff asserts that such a policy exists and cites to defendants' interrogatories that identified another administrator who was demoted to a teaching position and continued to receive her administrator salary and early retirement benefits. However, the District's 30(b)(6) deposition states that the District had no such policy.

pursue any grievance procedures or hearings. However, the parties agree that plaintiff's counsel repeatedly requested an explanation regarding the termination of plaintiff's early retirement benefits, and that these requests were ignored.

On March 12, 2018, the court denied defendants' motion to dismiss, holding that plaintiff sufficiently alleged a property interest in her retirement benefits. Toth v. Rich Township Sch. Dist. et al., 2020 WL 1255018, at *2 (N.D. Ill. Mar. 12, 2018). After taking discovery, the parties filed the instant motions for summary judgment.

## LEGAL STANDARD

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. See CTL ex rel. Trebatosky v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported only by speculation or conjecture.'" Grant v. Trus. of Ind. Univ., 870 F.3d 562, 568 (7th Cir. 2017).

## DISCUSSION

### 1) Discrimination

The court analyzes reverse discrimination claims brought under § 1981 pursuant to the same framework as Title VII claims. Bagwe v. Sedgwick Claims Mgmt. Servs., Inc., 811 F.3d

5

866, 879 n. 39 (7th Cir. 2016). To avoid summary judgment, a plaintiff must present evidence sufficient to permit a reasonable jury to conclude that defendant demoted her because of her race. See Ortiz v, Werner Enter., Inc., 834 F.3d 760, 765 (7th Cir. 2016). The standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse [ ] action." Id. To meet this standard a plaintiff may, but is not required, to rely on the burden shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This framework is just a means of organizing and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases. Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016). Whatever method is used, the question for the court remains the same: Has the non-moving party provided sufficient evidence to support a jury verdict of intentional discrimination? Morgan v. SVT, LLC, 724 F.3d 990, 997 (7th Cir. 2013).[4]

Here, plaintiff asserts that defendants discriminated against her because she is a member of a majority group, namely, Caucasian. The record indicates "fishy" background facts, and facts from which the trier of fact could conclude that the final decision makers were inclined to discriminate against Caucasian administrators. See Formella v. Brennan, 817 F.3d 503, 511 (7th Cir. 2016). Although no one made racially discriminatory comments directly to plaintiff, the record indicates that Bass stated on several occasions that white administrators were arrogant towards Black students. Bass specifically identified plaintiff when discussing the arrogance of white administrators and his desire to remove certain administrators. Further, the background circumstances regarding the interview committee, such as allowing the Black principals to rehire

---

[4] The parties' briefing relies exclusively on direct and indirect methods of proof. The court cautions counsel that the Seventh Circuit recently refined the standard for Title VII claims, eschewing the "rat's nest of surplus tests," including direct and indirect methods of proof. Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

their Black administrators but not allowing the white principal to rehire plaintiff, are sufficiently "fishy" to suggest that the District "is one of those unusual employers who discriminate[s] against the majority." Mills v. Health Care Service Corp., 171 F.3d 450, 455 (7th Cir. 1999). The record additionally indicates that plaintiff suffered an adverse employment action in the form of a demotion and corresponding salary cut, and that she was the only employee demoted despite receiving high rankings from the interview committee. Finally, plaintiff has presented evidence that her replacement candidate, a Filipino man, had much less experience than plaintiff.

Defendants' main argument in response is twofold: 1) plaintiff's theory is that she was discriminated against in favor of African Americans, yet the District replaced her with someone of Filipino descent; and 2) they had a legitimate reason for demoting plaintiff. The first argument is a non-starter, given the statements and clear animus in the record towards white administrators specifically. The record includes facts supporting the claim that plaintiff's Caucasian race was a factor in her demotion, regardless of the minority who replaced her.

Plaintiff counters the second argument by claiming the District's proffered reason is pretext for reverse discrimination. Pretext is more than faulty reasoning or bad judgment; pretext is a lie or phony reason. Barnes v. Board of Trs. of Univ. of Ill., 946 F.3d 384, 389 (7th Cir. 2020). To establish pretext, plaintiffs must identify "weaknesses, implausibilities, inconsistencies, or contradictions" in the defendants' proffered reasons for the demotion that a reasonable person would find worthy of credence. de Lima Silva v. Dep't of Corr., 917 F.3d 546, 561 (7th Cir. 2019) (citations omitted). In this context, "the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." Robertson v. Dep't of Health Servs., 949 F.3d 371, 380 (7th Cir. 2020) (citations omitted).

Defendants claim that their plan to remove and re-interview administrators was intended to allow the new superintendent to hire administrators of his or her choosing. Plaintiff has identified several inconsistencies in this position. First, a new superintendent had not been chosen and did not arrive until eighteen months later in August of 2017. Second, the new superintendent did not choose which administrators to re-hire; the Board did. And the Board did so many months before the new superintendent arrived. Finally, the affidavit testimony suggests this plan was of Bass's own making, and it was his desire to remove the white administrators in favor of minority candidates. Plaintiff has presented evidence creating a genuine dispute of material fact regarding the Board's reasoning.

For the reasons stated above, and viewing the record as a whole, a reasonable jury could conclude that plaintiff's race caused her demotion. Defendants' motion for summary judgment is denied.

**2) Due Process**

Plaintiff and defendants have filed cross-motions for summary judgement on plaintiff's due process claim. The elements of a procedural due process claim are, "(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 534 (7th Cir. 2008) (citations omitted). Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Ulichny v. Merton Cmty. Sch. Dist., 249 F.3d 686, 699 (7th Cir. 2001). "[P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms." Id. Rather, "property denotes a broad range of interests that are secured by existing rules or understandings." Id.

8

Further, "a property right may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances." Id.

Plaintiff has presented enough evidence for a reasonable jury to conclude that she had a protected interest in her early retirement program benefits. The early retirement incentive program can be found in the collective bargaining agreement ("CBA") as well as state statute. 40 ILCS 5/16-133(b). The Board voted to approve plaintiff's application to participate in the program in 2015, plaintiff received the additional salary benefits for one year, and after her demotion several officials repeatedly promised plaintiff that her salary and benefits would continue despite her demotion to a teaching position. The District did not follow through on its promise. Not only was plaintiff demoted to a position with a lower salary, but her retirement benefits ceased. Based on this record, a jury could find a legitimate entitlement and a deprivation of that entitlement.

Defendants once again argue that plaintiff cannot be entitled to these retirement benefits because a multi-year employment contract was invalid as a matter of law. The court previously disposed of this argument in ruling on defendants' motion to dismiss. Toth v. Rich Township Sch. Dist. et al., 2020 WL 1255018, at *2 (N.D. Ill. Mar. 12, 2018). Plaintiff's claim does not hinge on her employment contract, but rather on her early retirement agreement with the District and the benefits promised to her under that agreement. Plaintiff has presented enough evidence for a jury to conclude that she was entitled to the payments and benefits under the early retirement program.

Regarding the second element, plaintiff has similarly demonstrated a question of fact regarding the District's procedural protections. Once a plaintiff has demonstrated a protected property interest, a defendant cannot deprive her of that interest without due process. "To

determine what process is due when a State deprives an individual of property, courts look at three factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural protections; and (3) the government's interest in maintaining the current procedures." Halfhill v. Ne. Sch. Corp., 472 F.3d 496, 502 (7th Cir. 2006).

Plaintiff argues that she received no notification that her benefits or salary would be reduced. The March 22, 2016, letter informing her of her demotion says nothing about salary or benefits. In fact, the record indicates that officials repeatedly promised her that her benefits and salary would not change. The parties agree that plaintiff did not receive any sort of hearing prior to, or after, her demotion. Defendants counter that a reclassification hearing was available after plaintiff's demotion under either the collective bargaining agreement or the school code, and that plaintiff failed to utilize the procedures available to her. Additionally, in response to plaintiff's Local Rule 56.1 statement of facts, defendants attach a Board resolution authorizing reclassification of several administrators, including plaintiff. That resolution states that reclassified employees may seek a private or public hearing regarding their reclassification. Defendants further argue that it was "not incumbent on the District to request that Plaintiff file a grievance. It is her obligation to assert her own rights." (Doc. 93, 10).

Defendants' arguments are unpersuasive and do little more than demonstrate questions of material fact. First, a hearing after termination or demotion is insufficient process; a plaintiff is entitled to a pre-termination hearing. Simmons v. Gillespie, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause of the fourteenth amendment does require a state to afford an opportunity for a hearing before depriving someone of a property right created by state law.")

10

(Emphasis added.)[5]  Second, it is unreasonable for defendants to fault plaintiff for failing to request a reclassification hearing when defendants provided repeated assurances that her salary and benefits would remain unchanged in her teaching role (and ignoring her counsel's requests for an explanation once it was clear the District reneged on its promise).  Third, it is unclear from the record whether plaintiff had any notice of the available reclassification hearing.  A question of fact remains regarding whether the resolution itself is sufficient notice of plaintiff's procedural rights, and whether the Board provided the resolution to plaintiff.  See Dunesbery v. U.S., 534 U.S. 161, 168 (2002) (governmental entity bears the burden of showing that the procedures used were "reasonably calculated under all the circumstances" to apprise the party of the pendency of the action).  Finally, it is incumbent on the Board to provide plaintiff with sufficient process, and that includes reasonable notice regarding the available grievance procedures.  A reasonable jury could find the Board's process inadequate.

Given the material questions of fact, summary judgment is inappropriate. The court denies both plaintiff's and defendants' motions.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Doc. 80) is denied, and plaintiff's motion for summary judgment (Doc. 89) is denied.

**ENTER:** **September 25, 2020**

Robert W. Gettleman
United States District Judge

---

[5] Prior to being demoted to a teaching position, plaintiff was an administrator and thus not in the collective bargaining unit.  Consequently, she could not have invoked the grievance procedure under the CBA.

11